UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

DEAN CORREN, the VERMONT          :
PROGRESSIVE PARTY, STEVEN         :
HINGTGEN, RICHARD KEMP,           :
and MARJORIE POWER,               :
                                  :
     Plaintiffs,                  :     Case No. 2:15-cv-58
                                  :
          v.                      :
                                  :
WILLIAM SORRELL, Vermont          :
Attorney General in his           :
official capacity,                :
                                  :
     Defendant.                   :

## OPINION AND ORDER

Dean Corren, formerly a publicly-funded candidate for
Vermont Lieutenant Governor, was accused in 2014 of receiving an
unlawful contribution from the Vermont Democratic Party in
violation of the state's campaign finance law.  The Vermont
Attorney General's Office investigated the matter and initiated a
civil enforcement action against Corren in state court.  That
case is currently pending.

Corren now comes to federal court challenging several
provisions in the state campaign finance law as it pertains to
publicly-funded candidates.  Also appearing as Plaintiffs are the
Vermont Progressive Party, Steven Hingtgen, Richard Kemp, and
Marjorie Power.  Hingtgen, Kemp, and Power are each former
Progressive Party candidates and past political contributors.
Candidate David Zuckerman has moved to intervene.  The Defendant,
Attorney General William Sorrell, moves to dismiss the case on

the basis of *Younger* abstention and lack of standing, and opposes Zuckerman's intervention motion.  For the reasons set forth below, Sorrell's motion to dismiss is **granted in part and denied in part**, and Zuckerman's motion to intervene is **granted**.

## I.   Background and Procedural History

In 2014, Plaintiff Dean Corren ran unsuccessfully for Lieutenant Governor as the candidate of the Vermont Democratic and Progressive parties.  Corren financed his campaign with primarily public funds, granted to him through Vermont's public financing option, 17 V.S.A. Chapter 61, subchapter 5.  Under that statute, a candidate for Lieutenant Governor may receive public financing if he first raises at least $17,500 from not fewer than 750 individuals.  The public financing grants offer up to $32,500 for the primary election period and $150,000 during the general election period, amounting to a potential total of $200,000 in campaign funds.  Corren qualified for public financing for both the primary and the general elections, and received over $180,000 in campaign finance grants.

Vermont's campaign finance law prohibits publicly-funded candidates from soliciting, accepting, or expending campaign contributions other than qualifying contributions.  17 V.S.A. § 2853(b).  During the course of Corren's campaign, the office of Attorney General Sorrell received a complaint that the Corren campaign had accepted an unlawful, in-kind contribution in the

form of an October 24, 2014 email sent by the Vermont Democratic
Party ("VDP"). The email was sent by Dottie Deans, chair of the
VDP, and was entitled "How you can help me help Dean Corren."
The email stated in part:

> Many of you know I'm a strong supporter of Dean Corren
> for Lt. Governor but maybe you don't know why. Dean
> has the skills and experience to support our Vermont
> Democratic Party Platform and overcome some of the
> greatest challenges we face.
>
> . . .
>
> I believe Dean would make an excellent Lt. Governor,
> but to make this happen we all need to pitch in. Here
> are a few ways you can help.
>
> 1. **Come to a Rally!** This weekend we are joining
> Senator Bernie Sanders, Governor Peter Shumlin, Dean
> and local candidates at four [Get Out The Vote] rallies
> across the state. [The email went on to list four
> rallies in Bristol, Proctor, Hinesburg, and St.
> Albans.]
>
> . . .
>
> 3. **Tell Your Neighbors!** We are working every day to
> talk to voters in Vermont into getting to the polls on
> Election Day. Sign up to volunteer for a shift here.
> For other ways to help, please email
> volunteer@deancorren.com
>
> I appreciate all the work you are doing on behalf of
> our candidates around the state and look forward to
> celebrating great victories with you on the 4th. Now
> get out and vote for Congressman Peter Welch, Governor
> Peter Shumlin, Dean Corren for Lieutenant Governor, and
> the rest of our amazing Democratic ticket!

ECF No. 1-1.

On October 30, 2014, the Attorney General's Office notified
the Corren campaign and the Vermont Democratic Party that the

email constituted an uncompensated contribution prohibited by 17 V.S.A. § 2853(b)(1).  The alleged value of the contribution – representing the value of the email list – was $255.

After conducting an investigation, the Attorney General's Office provided Corren with a draft of a civil enforcement pleading it was prepared to file in state court.  The state court action would seek $20,000 in fines and the return of the approximately $52,000 in public funds that the Corren campaign had in its accounts as of the date of the email.  Corren disputed the claims, and alternatively offered to pay the $255 value of the contribution out of his campaign funds.  That offer was rejected.  As of December 12, 2014, the Corren campaign had spent all of its campaign funds with the exception of $73.60, which was returned to the State.

On March 25, 2015, the Attorney General's Office filed the enforcement action against Corren in Vermont Superior Court.  ECF No. 2-2.[1]  As the Attorney General had warned, the action seeks $20,000 in fines and a refund of the $52,000 in public funds held by the Corren campaign as of October 24, 2014.  Vermont Superior Court Judge Teachout has stayed the state court case until this Court resolves the question of abstention.

Corren filed the instant lawsuit on March 20, 2015.  On

---

[1]  The Attorney General'a Office previously reached a settlement with the Vermont Democratic Party with regard to its alleged violation.

4

April 6, 2015, he filed a motion for a preliminary injunction.
Sorrell responded with a motion to dismiss, asking the Court to
abstain from hearing Corren's claims in light of the pending
state court action.  Corren has since filed two amended
Complaints, adding new Plaintiffs and supplementing his
pleadings.  After each amendment, Sorrell again moved to dismiss.
The most recent motion to dismiss, filed in response to Corren's
Second Amended Complaint, contends that abstention is still
warranted and that all Plaintiffs lack standing to bring their
claims.

## II.  The Second Amended Complaint

The Second Amended Complaint consists of four counts.  Count
I challenges the constitutionality of 17 V.S.A. § 2983(b)(1),
which makes it unlawful for a publicly-funded candidate to (i)
solicit, accept, or expend any campaign contributions or (ii)
make any expenditures not covered by either the public financing
grant or the private money raised in order to qualify for that
financing.  Prohibited contributions include money spent by
political parties on behalf of the publicly-financed candidate.

Plaintiffs allege that this complete prohibition on
contributions violates the ruling in *Randall v. Sorrell*, 548 U.S.
230, 261 (2006), which held that Vermont could not prohibit
contributions of less than $400 to candidates for statewide
office.  Plaintiffs also claim that the statute interferes with

the candidate's right to associate with, and receive assistance from, political parties.  This harm, they claim, is exacerbated by the fact that as of 2015, Vermont allows traditionally-funded candidates to receive unlimited contributions from political parties.

In a related argument, Plaintiffs contend that by limiting a candidate's spending to the amount of the public grant, the law puts a publicly-funded candidate at an unfair disadvantage when facing a well-financed opponent.  The solution, they suggest, is a "rescue" provision that would allow publicly-funded candidates to raise additional private funds if necessary.

Count II attacks the constitutionality of 17 V.S.A. § 2944(c)(1) and (2), which state that a political party expenditure qualifies as a "related campaign expenditure" by an individual candidate if it primarily benefits six or fewer candidates.  Plaintiffs claim that the statute violates the rights of association of both the publicly-funded candidates and their parties, that the six-candidate threshold has no constitutional significance, and that this prohibition on party speech is unconstitutionally ambiguous and invites arbitrary enforcement.

Count III contends that the October 24, 2014 email was not a "contribution" as defined by Vermont law.  Title 17, Section 2901(4) states that a "'contribution' shall not include any of

6

the following . . . (F) the use of a political party's offices, telephones, computers, and similar equipment . . . ."  Because the email in question was sent on a party computer, Plaintiffs submit that it fell within the Section 2901(4)(F) exception. Count III also alleges that because the email invited readers to attend one of four campaign events, each of which was attended by three candidates, it fell within the exception for an expenditure "by a political party in connection with a campaign event at which three or more candidates are present."  17 V.S.A. § 2901(4)(L).

Count III further claims that the statute – as currently enforced by the Attorney General with respect to the October 24, 2014 email and potentially other communications – puts political parties and their supporters at risk of prosecution if they fail to report such party activities as contributions.  Accordingly, the Second Amended Complaint claims that the law creates a chilling effect on the speech and associational rights of publicly-funded candidates, political parties, and party members.

Count IV alleges that the refund of $52,000 demanded by the Attorney General's Office violates the Excessive Fines Clause of the Constitution; would be "grossly disproportional to the gravity of any offense and violates the Eighth Amendment"; is excessively punitive in violation of the Due Process Clause; is not rationally related to the offense in violation of the

7

Fourteenth Amendment; and violates the narrow tailoring required
under the First Amendment.

For relief, Plaintiffs seek declaratory and preliminary and
permanent injunctive relief with respect to actual or threatened
enforcement of 17 V.S.A. § 2944(c)(1) and (2) (defining related
expenditures) and § 2983(b)(1) (limiting publicly-financed
candidates to only authorized contributions).  The declaratory
judgment would also apply to the exclusions set forth at 17
V.S.A. § 2901(4)(F) (allowing contributions on behalf of multiple
candidates).  Additionally, Corren asks the Court to declare the
refund provision in the former 17 V.S.A. § 2903(b)
unconstitutional,[2] and to award him attorney's fees and costs.

## III.  Abstention

The Attorney General's motion to dismiss raises the
fundamental questions of (1) whether this Court should abstain
from hearing Corren's claims because of the pending state court
enforcement action, and (2) whether the various Plaintiffs have
standing to challenge the state's campaign finance laws.  Turning
first to the question of abstention, in *Younger v. Harris* the
Supreme Court held that a federal court may not enjoin a pending
state criminal proceeding in the absence of special circumstances

---

[2]  The Vermont Legislature recently amended Section 2903(b) and
removed the refund provision.  *See* 2015 Vt. Acts & Resolves, No. 30.
The statute currently calls for the refund of "an amount equivalent to
any contributions or expenditures that violate subdivision 2983(b)(1)
of this chapter."  17 V.S.A. § 2903(b).

suggesting bad faith, harassment, or irreparable injury that is both serious and immediate.  401 U.S. 37, 54 (1971); *Gibson v. Berryhill*, 411 U.S. 564, 573–74 (1973).  "*Younger* abstention has been extended to civil proceedings and state administrative proceedings, so long as the state court has a means of reviewing constitutional claims."  *Cecos International, Inc. v. Jorling*, 895 F.2d 66, 70 (2d Cir. 1990) (citations omitted).  The doctrine applies to cases which, as here, seek injunctive and declaratory relief.  *See Kirschner v. Klemons*, 225 F.3d 227, 235 (2d Cir. 2000).  If *Younger* applies, abstention is mandatory.  *Schlagler v. Phillips*, 166 F.3d 439, 442 (2d Cir. 1999).

The Second Circuit previously set forth a test for abstention under *Younger*, requiring (1) a pending state proceeding (2) that implicates an important state interest, and (3) that "the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims."  *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003).  This three-part test was derived from the Supreme Court's opinion in *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) ("*Middlesex*").

In 2013 the Supreme Court revised the test, holding that *Younger* abstention is limited to three classes of parallel proceedings: (1) "pending state criminal proceeding[s]"; (2)

9

"particular state civil proceedings that are akin to criminal
prosecutions"; and (3) civil proceedings "that implicate a
State's interest in enforcing the orders and judgments of its
courts." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588
(2013); *see id.* at 591 ("We have not applied *Younger* outside
these three 'exceptional' categories, and today hold . . . that
they define *Younger*'s scope."). In fashioning these categories,
*Sprint* described the Supreme Court's previous applications of
*Younger* to state civil proceedings as follows:

> Our decisions applying *Younger* to instances of civil
> enforcement have generally concerned state proceedings
> akin to a criminal prosecution in important respects.
> Such enforcement actions are characteristically
> initiated to sanction the federal plaintiff, *i.e.*, the
> party challenging the state action, for some wrongful
> act. In cases of this genre, a state actor is
> routinely a party to the state proceeding and often
> initiates the action. Investigations are commonly
> involved, often culminating in the filing of a formal
> complaint or charges.

134 S. Ct. at 584 (internal citations and quotation marks
omitted).

In this case, the Attorney General's enforcement of
Vermont's campaign finance law against Corren meets the *Sprint*
criteria for abstention and is consistent with the Supreme
Court's prior applications of *Younger*. The state court
enforcement action seeks to impose civil penalties and recover
public money as punishment for alleged violations of the campaign
finance law. As described in *Sprint*, the state court action is

being brought by a "state actor," and was initiated after an investigation.  *Id.*[3]

Sprint *also noted that while the* Middlesex *factors are not dispositive, they may be considered.*  *Id.* at 593.  Here, the first two factors are satisfied as there is a pending state proceeding that implicates the important state interest of enforcing Vermont campaign finance laws.  With respect to the third *Middlesex* factor, there is no dispute that the state courts will provide Corren with ample opportunity to present his federal constitutional claims.  *See*, *e.g.*, *State v. Green Mountain Future*, 2013 VT 87 (determining constitutional challenge to Vermont campaign finance law in light of recent U.S. Supreme Court election law rulings); *see also Spargo*, 351 F.3d at 77 ("[I]n conducting the *Younger* inquiry, considerations of comity 'preclude[ ] any presumption that the state courts will not safeguard federal constitutional rights.'")(quoting *Middlesex*, 457 U.S. at 431)).

Corren does not dispute either that the pending state court action is one for enforcement, or that the state court is fully

_____

[3]  The fact that this case was filed shortly before the state court enforcement action is of no concern, as the Court has not considered the merits of Corren's claims.  *See Middlesex*, 457 U.S. at 437 (explaining that where the "sole issue [in the federal court litigation] has been whether abstention is appropriate [and no] proceedings have occurred on the merits . . . [i]t would trivialize the principles of comity and federalism if federal courts failed to take into account that an adequate state forum for all relevant issues has clearly been demonstrated to be available prior to any proceedings on the merits in federal court").

able to hear his federal claims.  Instead, his early briefing –
in response to the initial motion to dismiss – relies on *Rapid
Rubbish Removal v. Ripley*, 988 F. Supp. 414, 417 (D. Vt. 1997)
for the proposition that the "'abstention doctrine is fluid.'"
ECF No. 15 at 2.[4]  The citation from *Ripley* is in reference to
the pre-*Sprint* test, which was arguably more "fluid" than the
narrow class of cases since identified by the Supreme Court.  988
F. Supp. at 417.  Furthermore, *Ripley* acknowledged that "[t]he
state judiciary is certainly capable of enforcing the federal
constitution," and refrained from hearing the case on the basis
of *Pullman* abstention.  *Id.* at 417-18.[5]  *Ripley* therefore
provides little assistance to Corren's cause.

Emphasizing the First Amendment interests inherent in the
enforcement of campaign finance laws, Corren also seeks to bring
this case within the "extraordinary circumstances" exception to
the *Younger* doctrine.  *Diamond "D" Const. Corp. v. McGowan*, 282
F.3d 191, 201 (2d Cir. 2002) (citing *Kugler v. Helfant*, 421 U.S.

---

[4]  The citation appears in Corren's opposition to Sorrell's first
motion to dismiss.  That opposition is incorporated into the
Plaintiffs' current briefing by reference.  ECF No. 33 at 1.

[5]  Under the *Pullman* doctrine, abstention is appropriate in cases
presenting federal constitutional issues which might be avoided or
modified by a state court ruling on state law issues. *See Colorado
River Water Conservation Dist. v. United States*, 424 U.S. 800, 814-816
(1976); *All. of Am. Insurers v. Cuomo*, 854 F.2d 591, 599 (2d Cir.
1988).  The Attorney General's initial memorandum in support of
abstention submitted that while *Younger* applies to Corren's claims,
abstention is also appropriate under the *Pullman* doctrine.  ECF No. 7
at 13 n.8.  The *Pullman* argument has not been briefed by the parties,
and the Court will not consider it here.

117, 124-25 (1975)).  The Second Circuit has determined that there are two predicates to this exception: "(1) that there be no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation; and (2) that a finding be made that the litigant will suffer 'great and immediate' harm if the federal court does not intervene."  *Id.* at 201 (quoting *Trainor v. Hernandez*, 431 U.S. 434, 441-42 & n.7 (1977)).  Here, there are clear state court remedies for any alleged constitutional violation, and Corren has not shown either great or immediate harm if those remedies are determined at the state court level.

Corren currently contends that the *Randall* decision provides this Court with ongoing jurisdiction under the doctrines of *res judicata*, collateral estoppel, and ancillary jurisdiction. Specifically, Corren claims that any campaign finance law preventing a party contribution of less than $400 violates *Randall*, and that this Court has continuing jurisdiction to enforce the Supreme Court's ruling.  That jurisdiction, he contends, overrides *Younger*.

None of the doctrines cited by Corren apply here.  *Randall* considered contribution limits to, and expenditures by, Vermont candidates under a former Vermont statute.  The question of publicly-financed candidates was not at issue.  *Randall*, 548 U.S. at 239.  While *res judicata* does not require a claim to have been

13

actually litigated, it does demand a full and fair opportunity to litigate the claim in the prior litigation.  *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).  In *Randall*, the Attorney General was a defendant rather than a plaintiff, and thus had no control over what was or "could have been raised." *Id.*  It would therefore by unfair and improper to apply *res judicata* against the Attorney General based upon *Randall*.

Furthermore, *res judicata* and collateral estoppel are not independent sources of federal subject matter jurisdiction.  *See, e.g., Johnson v. Freeburn*, 144 F. Supp. 2d 817, 827 (E.D. Mich. 2001) (noting that *res judicata* and collateral estoppel "do not involve questions of jurisdiction").  They are instead affirmative defenses, employed by parties who seek to preclude the re-litigation of an issue or claim.  *See Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 108 (2d Cir. 2001) ("Collateral estoppel and *res judicata* . . . are affirmative defenses.").  Such affirmative defenses do not create jurisdiction, and Corren has cited no authority for the proposition that they would override the exercise of *Younger* abstention.

Corren also seeks to invoke ancillary jurisdiction as a means for this Court to enforce a prior "'judgment or decree.'" ECF No. 33 at 2 (quoting *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 129 (2d Cir. 2007)).  The Supreme Court has limited ancillary

14

jurisdiction to a narrow set of circumstances.  *See Finley v. United States*, 490 U.S. 545, 551 (1989) (describing ancillary jurisdiction as applying in a "narrow class of cases").  Examples of such circumstances include "supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments — including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances."  *Peacock v. Thomas*, 516 U.S. 349, 356 (1996).

This case is fundamentally different from the types of enforcement actions cited in *Peacock*.  Here, Plaintiffs seek to invoke, or enforce, the holding in *Randall*.  While *Randall* may be relevant to the merits of this case, it is not the sort of "judgement or decree" that would be enforced by "attachment, mandamus, garnishment" or other sort of post-judgment remedy that would require ancillary jurisdiction.  *Id.* at 356-57 ("Our recognition of these supplementary proceedings has not, however, extended beyond attempts to execute, or to guarantee eventual executability of, a federal judgment.").

Finally, Corren submits that some of his prospective claims are not a part of the state court enforcement action and therefore survive *Younger* abstention.  The Attorney General's enforcement action pertains primarily to political party contributions barred by 17 V.S.A. §§ 2944(b)(1) and 2983(b)(1).

15

The action also requires interpretation of the contribution
exceptions as applied to parties under 17 V.S.A. § 2901(4), and
the refund provision in Section 2903(b).  Corren's federal claims
go further, challenging the bar on "rescue" contributions to
publicly-funded candidates in the event of a well-financed
opponent, and the prohibition on his ability to contribute to his
own campaign.  Sorrell does not dispute that these latter claims
would survive the *Younger* analysis.

Accordingly, abstention bars consideration of some, but not
all, of Corren's claims.  Specifically, the Court will abstain
from hearing Corren's claims with respect to authorized
contributions under 17 V.S.A. § 2983; the contribution
definitions in Section 2985; related expenditures under Section
2944; limits on spending under Section 2963; challenges to the
refund provision under Section 2903; and reporting requirements
under Sections 2062-64.  The Court will allow Corren's claims
with regard to the proposed "rescue" provision and self-financing
to proceed.

## IV.  Standing

Sorrell moves to dismiss all of the Plaintiffs' claims,
including the claims brought by Corren that are not barred by
abstention, for lack of standing.  Under Article III of the
Constitution, federal courts may resolve only actual cases or
controversies.  "One element of the bedrock case-or-controversy

16

requirement is that plaintiffs must establish that they have standing to sue." *McConnell v. FEC*, 540 U.S. 93, 225 (2003).

To establish standing generally, a plaintiff must (1) "have suffered an 'injury in fact' — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," and (2) the injury must be "fairly trace[able] to the challenged action of the defendant." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted). "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'" *Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (quoting *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979)).

## A.   Overbreadth

Plaintiffs argue that they are entitled to challenge Vermont campaign finance laws as overbroad.  A law is overbroad if "'a substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'" *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 n.6 (2008) (quoting *New York v. Ferber*, 458 U.S. 747, 769–71 (1982)).  The Second Amended Complaint alleges that Plaintiffs

17

may bring an overbreadth challenge since, "even if the parties'
own conduct was not affected, . . . there is a realistic danger
that the statute . . . will have an overall deterrent effect . .
. [and] cause others not before the court to refrain from
constitutionally protected speech or expression." ECF No. 28, ¶
64. This general danger, they claim, grants them "overbreadth
standing to challenge the chilling effects of the statute and the
Attorney General's enforcement position." *Id.*, ¶ 65.

Plaintiffs' reliance upon the overbreadth doctrine is
misplaced. While the doctrine allows Plaintiffs to assert claims
on behalf of both themselves and hypothetical third parties,
*Farrell v. Burke*, 449 F.3d 470, 498 (2d Cir. 2006), there must
still be an injury in fact, *id*. at 499. As explained by the
Second Circuit,

> Plaintiffs repeatedly refer to the First Amendment
> overbreadth doctrine as it if were relevant to whether
> they have established Article III standing. It is not.
> . . . [T]he overbreadth doctrine speaks to whose
> interests a plaintiff suffering Article III injury may
> represent. It does not provide a reason to find such
> injury where none is present or imminently threatened
> in the first instance.

*Hedges v. Obama*, 724 F.3d 170, 204 (2d Cir. 2013), *cert. denied*,
134 S. Ct. 1936 (2014). Accordingly, the Court must determine
whether standing is supported by the required injuries.

### B. Future Injuries

Plaintiffs each ask for prospective relief to prevent the
alleged chilling of their constitutional rights and future state

enforcement of the challenged statutes.  "To establish standing to obtain prospective relief," such as the injunctive and declaratory relief sought here, "a plaintiff must show a likelihood that he [or she] will be injured in the future." *Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010) (internal quotation marks omitted).  It is well established that a credible threat of present or future prosecution will confer standing.  *Doe v. Bolton*, 410 U.S. 179, 188–89 (1973).

> When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law.  *See Steffel v. Thompson*, 415 U.S. 452, 459, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat").  Instead, we have permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent. Specifically, we have held that a plaintiff satisfies the injury-in-fact requirement where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Babbitt v. Farm Workers*, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L. Ed.2d 895 (1979).

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014).

### i.  Corren

Corren has already been the subject of an enforcement action.  He now challenges the lack of a "rescue" provision, as

well as his ability to self-finance, arguing that the current
limitations hinder his ability to run a successful campaign
against a well-financed opponent.  Corren also claims that such
limitations restrict his political speech.

With regard to his standing as a candidate, Corren is
currently contemplating a run for governor in 2016.  He has not
formally announced his candidacy, in part because he is awaiting
this Court's rulings on the challenged provisions.  More
significantly, Vermont law prohibits him from announcing or
making expenditures of over $2000 as a publicly-financed
candidate prior to February 15, 2016.  17 V.S.A. § 2983(a).  In
light of the restriction in Section 2983(a), Corren cannot take
any additional formal action at the present time to support his
standing as a publicly-financed candidate for governor.

The Attorney General contends that Corren cannot challenge
the public-financing system because public financing is optional.
The argument is that by accepting public money, Corren agrees to
abide by the rules and restrictions that go along with it, and
that any injury suffered is therefore self-inflicted.  Such self-
inflicted injury allegedly breaks the causation chain, as the
State is not the direct cause of harm.

The Court finds this argument unpersuasive with regard to
the question of standing.  In *Buckley v. Valeo*, 424 U.S. 1, 13
(1976), the Supreme Court recognized a legislature may establish

20

standards governing the financing of political campaigns.  The
Court also acknowledged that candidates who are subject to such
standards have standing to challenge them.  *Buckley*, 424 U.S. 11-
12 (determining that standing existed where certain candidates
challenged disparate rules and contribution caps); *see also*
*Storer v. Brown*, 415 U.S. 724, 738 n.9 (1974) (noting that being
subjected to election law requirements may constitute cognizable
injury).  The First Circuit, addressing candidate standing,
concluded that when public financing is an option, a candidate is
compelled "to make in irrevocable commitment either to shun or
embrace" that option.  *Vote Choice, Inc. v. DiStefano*, 4 F.3d 26,
36-37 (1st Cir. 1993).  That "choice color[s] [the candidate's]
campaign strategy from the outset."  *Vote Choice, Inc. v.
DiStefano*, 814 F. Supp. 195, 204 (D. Me. 1993); *see DiStefano*, 4
F.3d at 37 (finding the district court's finding on this point
"unimpugnable").  The court concluded that "such an impact on the
strategy and conduct of an office-seeker's political campaign
constitutes an injury of a kind sufficient to confer standing."
*DiStefano*, 4 F.3d at 37 (citing *Buckley*, 424 U.S. at 12 n.10).

This Court may ultimately conclude that by accepting public
financing, a candidate waives the right relief on the basis of an
alleged constitutional injury.  However, that argument does not
deprive the candidate of standing at the outset.  Indeed, when
restrictions on publicly-financed candidates arguably run afoul

of the First Amendment, there must be an avenue for judicial review. *Cf. Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806, 2828 (2011) ("[t]he goal of creating a public financing scheme can only be pursued in a manner consistent with the First Amendment"). Corren, as a future publicly-financed candidate, may seek such a review in this case.[6]

Finally, Corren has shown that the threat of enforcement by the Attorney General's Office is real. If he were to either collect contributions or self-finance beyond the limitations set for publicly-financed candidates, he would surely render himself vulnerable to a second enforcement action. The Court therefore finds, based upon the current record, that the threat of prosecution is credible, and that Corren has standing to challenge Vermont's public-financing scheme. See *Babbitt*, 442 U.S. at 498 (holding that plaintiff could bring a pre-enforcement suit when he "has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder").

### ii.  Vermont Progressive Party

---

[6]   The Attorney General also argues that Corren lacks standing to argue for a "rescue" provision because he has no right to a level financial playing field.  The Court views this as a merits argument, and not a bar to standing.

The Vermont Progressive Party ("VPP") claims to have standing on the basis of its ongoing monetary and in-kind support for candidates, including publicly-funded candidates. In *Landell v. Sorrell*, this Court found that the Vermont Libertarian Party had standing to challenge limits on political party contributions because of its "inten[t] to carry out [its] supporting role for Vermont political candidates this year and in the future." 118 F. Supp. 2d 459, 476 (D. Vt. 2000), *aff'd in part, vacated in part*, 382 F.3d 91 (2d Cir. 2004), *rev'd in part sub nom., Randall v. Sorrell*, 548 U.S. 230 (2006). The same analysis applies here, as the VPP plainly intends to support its candidates in the 2016 election and beyond.

Furthermore, the Second Amended Complaint alleges that because of Vermont's limitations on publicly-funded candidates, "both the VPP and Mr. Corren extensively self-censored, erecting a communication barrier between VPP and his campaign . . . ." ECF No. 28, ¶ 24. Such communications are one way in which the VPP expresses its views, and "[t]he independent expression of a political party's views is 'core' First Amendment activity no less than is the independent expression of individuals, candidates, or other political committees." *Colorado Republican Fed. Campaign Comm. v. Fed. Election Comm'n*, 518 U.S. 604, 616, (1996). In the First Amendment context, an actual injury exists when a plaintiff is chilled from exercising its rights to free

expression or when it foregoes expression in order to avoid
enforcement consequences. *Virginia v. American Booksellers
Ass'n, Inc.*, 484 U.S. 383, 392–93 (1988).

This latter principle holds true even when a newly-enacted
statute has not yet been enforced, as "the alleged danger of
[the] statute [was], in large measure, one of self-censorship; a
harm that can be realized even without an actual prosecution."
*Id.* at 393.  In this case there has been more than just a threat
of enforcement.  Indeed, the Attorney General's Office actively
pursued both the Corren campaign and the Vermont Democratic Party
after receiving a report of a potential campaign finance
violation.  There is therefore a credible threat of future
prosecution, that threat is allegedly impeding free expression,
and the VPP has standing to brings its claims.

### iii. Hingtgen, Kemp, and Power

Plaintiffs Hingtgen, Kemp, and Power claim standing on the
basis of past and future contributions to the VPP.  The right to
associate in a political party has been deemed "a particularly
important right." *Randall*, 548 U.S. at 256 (citing *California
Democratic Party v. Jones*, 530 U.S. 567, 574 (2000); *Timmons v.
Twin Cities Area New Party*, 520 U.S. 351, 357, (1997); *Norman v.
Reed*, 502 U.S. 279, 288 (1992)).  As contributors to the VPP,
these individuals expect the party to use their contributions in
support of its candidates.  Those expectations are allegedly

24

frustrated when Vermont limits the types of assistance that political parties can offer to publicly-financed candidates.

These Plaintiffs also claim standing as contributors to individual candidates.  Powers in particular claims a right to contribute to the Corren campaign in excess of current limitations if Corren is being outspent by an opponent.  The Supreme Court has acknowledged that

> [t]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association.  When an individual contributes money to a candidate, he exercise both of those rights.  The contribution "serves as a general expression of support for the candidate and his views" and "serves to affiliate a person with a candidate."

*McCutcheon v. FEC*, 134 S. Ct. 1434, 1448 (2014) (quoting *Buckley*, 424 U.S. at 15); *see also Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 400 (2000) (Breyer, J., concurring) (stating that "[t]hrough contributions the contributor associates himself with the candidate's cause, helps the candidate communicate a political message with which the contributor agrees, and helps the candidate win by attracting the votes of similarly minded voters.").

It is therefore well established that contributors to political parties and campaigns engage in protected First Amendment activities.  Those activities are allegedly being curtailed by the limitations in Vermont's campaign finance law as it pertains to publicly-funded candidates.  Plaintiffs Hingtgen,

Kemp, and Power, as contributors to both the VPP and individual
candidates, have standing to challenge those limitations. *See*
*Landell*, 118 F. Supp. 2d at 475 (finding that campaign
contributor has standing to challenge campaign contribution law).

That said, there is an allegation in the Second Amended
Complaint that the lack of a "rescue" provision will hinder "any
of the plaintiffs should they decide to run again." ECF No. 28,
¶ 41. Hingtgen, Kemp, and Power are each past candidates for
Lieutenant Governor. There is no allegation, however, that any
one of them is actively considering running for office as a
publicly-financed candidate in the future. The mere potential of
a "foray into electoral politics" is "too speculative to provide
the basis for an injury to [the candidates's] competitive
interests." *Nader v. FEC*, 725 F.3d 226, 229 (D.C. Cir. 2013);
*cf. Lujan*, 504 U.S. at 564 (noting that "'some day' intentions .
. . do not support a finding of the 'actual or imminent' injury
that our cases require."). These individuals therefore lack
standing to bring suit as potential political candidates.

## V. Motion to Intervene

The most recent motion before the Court is one for
intervention filed by State Senator David Zuckerman. Zuckerman
has announced his entry into the 2016 race for the office of
Lieutenant Governor. His intervention pleading seeks to join the
Plaintiffs' challenges to the expenditure and fundraising caps

set forth in 17 V.S.A § 2983(b)(1), the lack of a "rescue" provision, and the restrictions on related expenditures in 17 V.S.A. § 2944.  Zuckerman also hopes to challenge 17 V.S.A. § 2983(a), which prohibits a publicly-financed candidate from announcing his or her candidacy, or raising or expending more than $2,000, prior to February 15, 2016.  This restriction, he claims, will be particularly harmful in the upcoming 2016 race, as two traditionally-funded candidates for Lieutenant Governor have already declared and are raising money.

Rule 24 of the Federal Rules of Civil Procedure sets out the standards governing motions to intervene.  Section (a) of the Rule addresses intervention "of [r]ight," while section (b) addresses "[p]ermissive" intervention.  Fed. R. Civ. P. 24. Pursuant to Rule 24(a)(2), a court must allow any party to intervene who, "[o]n timely motion,"

> . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  This provision has been described as a four-part test, requiring each of the following conditions to be satisfied before intervention can be granted:

> (1) that the motion is timely;
>
> (2) that the applicant asserts an interest relating to the property or transaction that is the subject of the action;

27

(3) that the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and

(4) that the applicant's interest is not adequately represented by the other parties.

*See MasterCard Int'l v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006) (citation omitted).

With respect to permissive intervention, Rule 24(b) states that the Court may permit a person to intervene "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The Court's discretion in deciding whether to allow permissive intervention is "very broad." *United States Postal Serv. v. Brennan*, 579 F.2d 188, 192 (2d Cir. 1978); *see also New York News, Inc. v. Kheel*, 972 F.2d 482, 487 (2d Cir. 1992) (holding that a district court "has broad discretion to [grant or] deny an applicant's motion for [permissive] intervention[ .]"

The court "considers substantially the same factors" for intervention as of right or permissive intervention. *R Best Produce, Inc. v. Shulman-Rabin Marketing Corp.*, 467 F.3d 238, 240 (2d Cir. 2006) (citations and internal quotation marks omitted). This includes "the nature and extent of the intervenors'

28

interests" and "the degree to which those interests are adequately represented by other parties[.]" *H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) (internal quotation marks omitted). This also includes "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Id.* (internal quotation marks omitted).

Here, Zuckerman's motion displays sufficient grounds for permissive intervention. As a declared candidate for 2016, he has a clear interest in the resolution of the issues in this case. Furthermore, his petition sets him apart from Plaintiffs Hingtgen, Kemp, and Power, none of whom have standing as future candidates. Zuckerman's ability to pursue the Plaintiffs' claims is also distinct from that of Corren, who is barred in several respects by the Court's need to abstain. As a consequence, Zuckerman's presence in the case will not only be free of prejudice to the original parties, but will actually enhance their ability – through common counsel – to pursue the requested relief. Zuckerman's motion to intervene is therefore **granted**.

## VI.  Conclusion

The Attorney General's most recent motion to dismiss (ECF No. 32) is **granted in part and denied in part**. The Court will

abstain from hearing Corren's challenges to Vermont's campaign finance law insofar as those challenges relate to the enforcement action currently pending against him in state court. Because the refund provision is one such challenge, and that provision has since been repealed such that there can be no effective prospective relief, Count IV of the Second Amended Complaint is dismissed without prejudice. Corren may proceed in this case with his challenges to the bar on "rescue" contributions to publicly-funded candidates, and to the prohibition on his ability to contribute to his own campaign. Plaintiffs have standing to bring the remaining claims as set forth above.

The Attorney General's prior motions to dismiss (ECF Nos. 7 and 20) are **denied** as moot. Zuckerman's motion to intervene (ECF No. 36) is **granted**. The motion to stay proceedings pending a decision on the motion to dismiss (ECF No. 8) is **granted**, and responses to all pending motions for injunctive and declaratory relief shall be filed no later than December 23, 2015. The Court will hold a testimonial hearing on those motions at 9:30 a.m. on January 14, 2016.

Dated at Burlington, in the District of Vermont, this 8th day of December, 2015.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge