```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                       DISTRICT OF VERMONT

DEAN CORREN, the VERMONT        :
PROGRESSIVE PARTY, STEVEN       :
HINGTGEN, RICHARD KEMP,         :
and MARJORIE POWER,             :
                                :
     Plaintiffs,                :
                                :
DAVID ZUCKERMAN,                :
                                :
     Intervenor/Plaintiff,      :
                                :
          v.                    :    Case No. 2:15-cv-58
                                :
THOMAS J. DONOVAN, Vermont      :
Attorney General in his         :
official capacity, and          :
JAMES CONDOS, Vermont           :
Secretary of State in his       :
official capacity,              :
                                :
     Defendants.                :
```

## OPINION AND ORDER

Plaintiffs are challenging the constitutionality of
Vermont's campaign finance statute as it applies to publicly-
financed candidates.  In an Opinion and Order dated March 9,
2016, the Court found no constitutional infirmity in the statute
and dismissed the case without prejudice.  The scope of the
Court's ruling was necessarily limited, as it had previously
abstained from deciding any issues presented in the civil
enforcement action being brought in state court against Plaintiff
Dean Corren.

Plaintiffs now contend that although their federal case was
dismissed, they prevailed on certain issues and are entitled to

attorneys' fees and related costs.  They also move the Court for
reconsideration and/or relief from judgment.  For the reasons set
forth below, Plaintiffs' motions are **denied.**

## I.   Factual Background

The Court has issued two fundamental rulings in this case.
The first, docketed on December 8, 2015, determined that the
Court must abstain from hearing any constitutional challenges
raised by Dean Corren "insofar as those challenges relate to the
enforcement action currently pending against him in state court."
ECF No. 68 at 3.  The ruling allowed several other claims to
proceed, including those of Corren's co-Plaintiffs and intervenor
David Zuckerman.

On March 9, 2016, the Court ruled on all remaining claims
and found no basis for granting Plaintiffs relief.  In doing so,
the Court offered its opinion about those activities that are
exempt from being "contributions" under 17 V.S.A. § 2901(4), and
their relationship to the related expenditures provision in 17
V.S.A. § 2983(b)(1).  Accepting Defendants' concessions with
respect to that relationship, the Court found that the exemptions
in Section 2901(4) apply throughout the campaign finance statute,
thus allowing "candidates to communicate freely with, and receive
meaningful assistance from, their supporters.  Political parties
in particular may provide publicly-financed candidates with
office space, voter lists, training sessions, and other forms of

traditional party support without violating any statutory restrictions." ECF No. 58 at 26.

Consistent with its abstention ruling, the Court did not determine whether a specific email, sent by the Vermont Democratic Party ("VDP") to approximately 19,000 people and entitled "How you can help me help Dean Corren," violated the public financing portions of Vermont's campaign finance law. That question and any related defenses remain for the state courts to resolve.

The Court understands that its interpretation of Section 2901(4) is based upon its assessment of how the Vermont Supreme Court would interpret that provision. Under this Court's interpretation, the email in question may fall within the statutory exemptions and may thus resolve the dispute. If, however, the state courts disagree with that interpretation, the Plaintiffs may need to re-file this action such that the Court can review the constitutionality of the entire public financing scheme.

## II. Motion for Reconsideration

### A. Legal Standard

Plaintiffs now ask the Court to reconsider its March 9, 2016 Opinion and Order, claiming (1) that the Attorney General's conduct after the Court issued its ruling warrants additional federal review, and (2) that the Court did not adequately address

the question of self-financing by publicly-financed candidates.

Plaintiffs have filed their motion pursuant to Federal Rules of

Civil Procedure 59(e) and 60(b).  Rule 59(e) may be used to alter

or amend a judgment, while Rule 60(b) provides relief from a

final order.  Under either rule, the accepted standard for

granting a motion for reconsideration "is strict, and

reconsideration will generally be denied unless the moving party

can point to controlling decisions or data that the court

overlooked."  *Analytical Surveys, Inc. v. Tonga Partners*, L.P.,

684 F.3d 36, 52 (2d Cir. 2012) (citation omitted).

The Second Circuit has further instructed that a district

court may grant reconsideration if the movant demonstrates an

"intervening change in controlling law, the availability of new

evidence, or the need to correct a clear error or prevent

manifest injustice."  *Kolel Beth Yechiel Mechil of Tartikov, Inc.*

*v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citing

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245

(2d Cir. 1992)).  A motion for reconsideration is "not a vehicle

for relitigating old issues, presenting the case under new

theories, securing a rehearing on the merits, or otherwise taking

a 'second bite at the apple.'"  *Analytical Surveys, Inc.*, 684

F.3d at 52 (internal citation omitted).  The decision whether to

grant a motion for reconsideration rests within the "sound

discretion of a district court judge."  *Aczel v. Labonia*, 584

F.3d 52, 61 (2d Cir. 2009); *see McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983).

### B.   Post-Judgment Enforcement Position

Plaintiffs first contend that after the Court issued its March 9, 2016 Opinion and Order, the Attorney General adopted a "new and heretofore undisclosed enforcement position" that requires additional federal court relief.  ECF No. 63 at 1.  In the state court case, the Attorney General has consistently alleged that the email sent by the VDP constituted a coordinated in-kind contribution to the Corren campaign.  Because Corren was publicly-funded, and did not report or pay for the value of the email, he allegedly violated his pledge to receive only public money.

Plaintiffs claim that after the Court issued its March 9, 2016 ruling, the Attorney General argued – reportedly for the first time – that the statutory exemptions from the term "contribution" do not apply to the VDP email because the email urged voters to support a particular candidate.  As the Attorney General wrote in his state court briefing, "[w]here, as here, an 'objective observer' would conclude that the purpose of a communication 'is to influence voters to vote yes or no on a candidate,' § 2901(4)'s definition of a contribution is triggered."  *See* ECF No. 63-1 at 4 (quoting *State v. Green Mountain Future*, 2013 VT 87, ¶ 54, 194 Vt. 625, 86 A.3d 981).

Plaintiffs argue that this new position would essentially bar all communications advocating for a publicly-funded candidate, and that such a bar would severely restrict free speech rights as well as the "rights of [publicly-funded candidates], supporters and political parties to associate and to engage in collective political action."  ECF No. 63 at 5.  Plaintiffs further submit that the Court's prior ruling, with its focus on the statutory exemptions under Section 2901(4), is no longer sufficient to protect their rights.

Defendants dispute Plaintiffs' characterization of their state court position.  While Plaintiffs suggest that the Attorney General is proposing a complete ban on advocacy for publicly-financed candidates, Defendants respond that the Attorney General must still show the sort of coordination between supporter and candidate that would qualify the communication as a related expenditure.  ECF No. 68 at 6 ("Because, as alleged in the Complaint, the mass email was solicited, drafted, and accepted by Corren and by his campaign staff, the State contends it is a related expenditure and a contribution under the law.").  The Attorney General's state court briefing also acknowledges the Section 2901(4) exemptions, arguing that none apply to the VDP email.  ECF No. 63-1 at 5-6.

The state court enforcement action is premised upon the allegation that the Corren campaign received a related

expenditure, yet failed to report it as a contribution.  Whether the email did, in fact, constitute a related expenditure, and whether any of the Section 2901(4) exemptions apply, are questions for the state courts to determine.  This Court has abstained, and will continue to abstain, from resolving those issues.

Plaintiffs warn that the Attorney General's current position raises the prospect of new constitutional harms that will reach beyond any state court ruling.  The Attorney General insists that its arguments focus narrowly upon the Corren campaign's conduct. While broad constitutional issues may arise from a single case, the construction of the Vermont campaign finance statute is currently in the hands of the state courts, and beyond the guidance provided in its May 9, 2016 Opinion and Order, this Court will not, and indeed may not, interfere.

As to any specific grounds for reconsideration as established in this Circuit's case law, Plaintiffs point to no intervening change in the law, no new evidence, and no data or other information that the Court overlooked.  *See Kolel Beth Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 104.  Nor is there a need to protect against manifest injustice.  *Id.*  To the extent that Plaintiffs have concerns about the Attorney General's state court arguments, Dean Corren may raise those concerns in that forum.  The motion for reconsideration on the basis of allegedly-

new arguments raised in state court is **denied.**

## C. Self-Financing By Publicly-Funded Candidates

Plaintiffs' second argument for reconsideration is that the Court did not adequately address the question of self-financing. Plaintiffs first raised the issue of self-financing as part of their demand for a "rescue" provision that would allow publicly-financed candidates to spend beyond the statutory cap if they are outspent by a traditionally-financed opponent. ECF No. 11 at 6-7. The Court found no constitutional basis for requiring such a provision, and Plaintiffs do not seek reconsideration of that determination.

The question of self-financing was most clearly presented in the pleading submitted by Intervenor/Plaintiff Zuckerman, who claimed a right to self-finance as part of his general attack on expenditure limits. *See* ECF No. 40 at 4 (alleging that "[t]he fixed cap of §2983(b)(1) also violated Sen. Zuckerman's right as a candidate to self-finance his campaign"). The Court's March 9, 2016 Opinion and Order upheld those limits, noting that when candidates accept public financing, they also agree to certain restrictions. *See* ECF No. 58 at 18 (citing *Buckley v. Valeo*, 424 U.S. 1, 57 n.65 (1976) for the proposition that the legislature "may condition acceptance of public funds on an agreement by the candidate to abide by specified expenditure limitations"). The Court further noted, albeit in the context of private

fundraising, that allowing unlimited expenditures in combination with public funding would "render public financing meaningless, since public funds would be just another means of funding" a campaign.  ECF No. 58 at 21 n.6.

Plaintiffs again cite no controlling decisions or data that the Court overlooked.  Plaintiffs rely in part upon *Davis v. FEC*, 554 U.S. 724, 738-39 (2008), in which the Supreme Court considered a statute, known as the "Millionaire's Amendment," that offered certain benefits to candidates whose self-financed opponents spent in excess of $350,000 in personal funds.  The Supreme Court held that those benefits were unconstitutional because they discouraged spending, and therefore speech, by the self-financed candidate.  *Davis*, 554 U.S. at 743-44.  The provision at issue in *Davis* said nothing about a publicly-financed candidate contributing to his or her own campaign.

Plaintiffs also cite *McCutcheon v. FEC*, 134 S. Ct. 1434, 1442 (2014), which considered the constitutionality of a law that restricted the amount a single donor could contribute "in total to all candidates or committees."  The Supreme Court struck down these so-called aggregate limits, concluding that such limits, in combination with the base limits on contributions to individual candidates, forced donors to choose how many candidates they could support.  That limitation, the Court held, furthered "the impermissible objective of simply limiting the amount of money in

9

political campaigns." *McCutcheon*, 134 S. Ct. at 1456.  As with *Davis*, the ruling in *McCutcheon* has little application to this case.

The Court therefore finds that Plaintiffs have failed to show valid grounds for reconsideration on the question of self-financing.  To the extent that the issue was raised previously, it was addressed in the Court's prior Opinion and Order and nothing in the Plaintiffs' current briefing mandates a second review.  The motion for reconsideration is therefore **denied.**

### III. **Motion for Attorneys' Fees and Related Costs**

Although their case was dismissed, Plaintiffs have moved the Court to award them attorneys' fees and related costs under 42 U.S.C. § 1988.  As noted above, the Court's May 9, 2016 Opinion and Order accepted Defendants' concessions and opined that the exemptions set forth in 17 V.S.A. § 2901(4) apply throughout the campaign finance statute.  The Court did not issue any sort of injunction or declaratory relief, as Plaintiffs had requested.

A party is considered a prevailing party for purposes of Section 1988 if the party "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Farrar v. Hobby*, 506 U.S. 103, 109 (1992); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "To qualify for attorney's fees, there must be a 'judicially sanctioned change in the legal relationship of the parties.'"

*Kirk v. N.Y. State Dep't of Educ.*, 644 F.3d 134, 137 (2d Cir.
2011) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't
of Health & Human Res.*, 532 U.S. 598, 605 (2001)).  "In short, a
plaintiff prevails when actual relief on the merits of his claim
materially alters the legal relationship between the parties by
modifying the defendant's behavior in a way that directly
benefits the plaintiff."  *Farrar*, 506 U.S. at 111–12; *see also
Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S.
782, 792–93 (1989) ("The touchstone of the prevailing party
inquiry must be the material alteration of the legal relationship
of the parties.").  "The Plaintiff must obtain an enforceable
judgment against the defendant from whom fees are sought, or
comparable relief through a consent decree or settlement."
*Farrar*, 506 U.S. at 111.

Plaintiffs submit that their case sought, among other
things, a ruling on the rights of political supporters to
associate with candidates.  The Court's reading of Section
2901(4) addressed those rights, concluding that the statute
allowed for multiple forms of association between candidates and
their supporters.  Consistent with that view of the law, the
Court found no constitutional violation.

In setting forth its opinion about the role of the Section
2901(4) exemptions, the Court may have clarified, but did not
alter, the legal relationship between the parties.  Defendants

had conceded in their briefing that the exemptions in Section

2901(4) applied throughout the statute, and in particular to the

related expenditures provisions.  Though Plaintiffs now claim

that Defendants' concessions constituted a change in position,

and testimony before the Court suggested inconsistent enforcement

positions, the State's filings in the enforcement action have

consistently acknowledged the possibility of a Section 2901(4)

exemption.  *See, e.g.*, ECF No. 2-2 at 2.

Plaintiffs' claims were ultimately dismissed, albeit without

prejudice.  No injunction was ordered, and no declaratory

judgment issued.  The legal relationships between the parties

remained unchanged, as the Court declined Plaintiffs' invitation

to either strike down or re-write portions of Vermont's campaign

finance law.  The Court did offer a reading of the statute that

was, in its opinion, in keeping with the intent of the Vermont

Legislature.  That reading, though perhaps to the Plaintiffs'

liking, does not entitle them to attorneys' fees and related

costs under Section 1988.  Their motion is therefore **denied.**

Dated at Burlington, in the District of Vermont, this 29th

day of March, 2017.


                              /s/ William K. Sessions III
                              William K. Sessions III
                              District Court Judge